## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

*United States of America v. Kaleem Tikori Fredericks*
Case No. 3:16-cr-00114-TMB-1

| | |
|---|---|
| By: | THE HONORABLE TIMOTHY M. BURGESS |
| <u>PROCEEDINGS</u>: | ORDER FROM CHAMBERS |

The matter comes before the Court on Defendant Kaleem Tikori Fredericks' *Pro Se* Motion for Compassionate Release and Amended Motion for Compassionate Release (the "Motion").[1] Fredericks requests compassionate release due to declining health conditions and injuries sustained while in custody, as well as a reduction in sentence.[2] The United States (the "Government") opposes the Motion.[3] The United States Probation & Pretrial Services ("USPO") advises against Fredericks' early release.[4] For the following reasons, the Court **DENIES** the Motion.

### A. Background

On January 13, 2017, Fredericks pleaded guilty to charges of Armed Bank Robbery, in violation of 18 U.S.C. §§ 2113(a) and (d); Conspiracy to Commit Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a); Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a); and Brandishing Firearm During Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 924(c)(1)(B)(i).[5] In the underlying offense, Fredericks and a codefendant conspired to commit and committed a series of robberies at five Anchorage businesses and a Wells Fargo Bank between August 11 and August 18, 2016.[6] Fredericks and his codefendant used several firearms to obtain $30,954 in U.S. currency, articles, and commodities.[7] On August 18, 2016, Fredericks used some of this cash to rent a hotel room, buy clothing, and book airline tickets out of Alaska.[8] Later that day, he was arrested at the airport carrying $11,752 in U.S. currency.[9] On April 16, 2018, Fredericks was sentenced to 130 months of imprisonment followed by five years of supervised release and ordered to pay $30,954 in restitution.[10] He is currently housed at Federal Correctional Institution ("FCI") Lewisburg with a projected release date of January 18, 2027.[11]

---

[1] Dkt. 187 (Sealed *Pro Se* Motion for Compassionate Release); Dkt. 204 (Sealed Amended Motion for Compassionate Release).
[2] Dkt. 204 at 11–13.
[3] Dkt. 209 (Government's Opposition to Compassionate Release).
[4] Dkt. 188 (Sealed USPO Memorandum).
[5] Dkt. 50 (Minute Entry); Dkt. 39 (Plea Agreement).
[6] Dkt. 39 at 6–9.
[7] *Id.*
[8] *Id.* at 9.
[9] *Id.*
[10] Dkt. 104 (Minute Entry); Dkt. 106 (Judgment).
[11] *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/.

This is Fredericks' third request for compassionate release. In December 2020, Fredericks filed his first motion for compassionate release due to health risks posed by COVID-19.[12] The Court denied his request, noting he did not have a high-risk health condition and had recovered with minor symptoms after testing positive, and considering the seriousness of the offense and his disciplinary history while in custody.[13] Fredericks again moved for compassionate release in May 2023, reporting "mental debilitation" and being "tortured physically" while in Bureau of Prisons ("BOP") custody, a lack of available programming at his institution, and BOP's failure to credit him for Earned Time Credits.[14] The Court again denied his request, noting that he had not exhausted his administrative remedies, had not demonstrated extraordinary and compelling reasons for release, and that the 18 U.S.C. § 3553(a) factors weighed against release.[15]

Fredericks filed a *pro se* Motion for Compassionate Release on July 30, 2024.[16] Fredericks then filed an amended Motion for Compassionate Release ("the Motion") on October 11, 2024.[17] In the Motion, Fredericks describes two health concerns as the bases for compassionate release.[18] First, he was recently diagnosed with a health condition that he argues BOP is not treating.[19] Second, he alleges that he sustained two serious injuries while in BOP custody.[20] Fredericks alleges that one of the injuries occurred while he was "wrongly restrained by BOP staff."[21] In his *pro se* motion, he acknowledges that he has incurred several disciplinary actions while in BOP custody, but suggests this is a result of being exposed to traumatic experiences and retaliation by BOP staff.[22] Fredericks also notes that he has served approximately 100 months, or over 80%, of his 130-month sentence.[23] He proposes a reduction in sentence (RIS) with a release to home confinement to his family residence in the U.S. Virgin Islands, which he suggests should lessen the Court's concerns about the seriousness of the underlying offense and community safety.[24]

The Government opposes the motion.[25] The Government argues that "Fredericks's health conditions do not substantially limit his ability to care for himself . . . Indeed, he has been prescribed medications but has refused to take them . . . [H]e does not require others to care for him, nor is he unable to tend to basic life functions."[26] The Government further asserts that Fredericks "remains young and appears to still be in good health and to be receiving adequate

---

[12] Dkt. 144 (Motion for Compassionate Release).
[13] Dkt. 152 (Order Denying Motion for Compassionate Release).
[14] Dkt. 172 (Motion to Reduce Sentence).
[15] Dkt. 186 (Order Denying Motion to Reduce Sentence).
[16] Dkt. 187 (*Pro Se* Motion for Compassionate Release).
[17] Dkt. 204.
[18] *Id.* at 11–12.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] Dkt. 187 at 1.
[23] Dkt. 204 at 2.
[24] *Id.* at 6, 13.
[25] *See generally* Dkt. 209.
[26] *Id.* at 5.

medical care" for his medical condition.[27] Moreover, it asserts that "Fredericks remains a danger to the public" given the seriousness of the offense, his history of "serious infractions in BOP custody," and his "continued . . . violat[ions] [of] BOP rules."[28] Noting that Fredericks still has two years remaining on his prison sentence, the Government suggests that early release "would not promote respect for the law, reflect the seriousness of his conduct, provide adequate deterrence, or be just."[29]

USPO advises against Fredericks' early release.[30] It notes that although Fredericks submitted medical records supporting his health condition, these medical results were inconsistent and inconclusive as to a diagnosis.[31] Further, it reports that BOP attempted to provide Fredericks medical care for injuries he sustained while in BOP custody, but that Fredericks was non-compliant and refused treatment.[32] USPO also reports that Fredericks continues to commit serious disciplinary infractions while in custody, including infractions for disruptive conduct, threats, and aggressive behavior.[33] It notes that in addition to 38 prior infractions while in custody for this offense, he incurred eight infractions since December 1, 2023.[34] Although he has completed anger management classes, USPO suggests he is unable to follow BOP rules and is reluctant to engage in rehabilitation efforts.[35] Moreover, Fredericks has an extensive criminal history and a pattern of violent behavior, including assault, fleeing law enforcement, burglary, reckless driving, and interfering with a domestic violence report.[36] Based on the serious nature and circumstances of the offense, which involved Fredericks threatening victims with a firearm while engaging in a series of robberies, his criminal history, and the need to deter further criminal conduct and protect the public, USPO recommends against his release.[37]

### B. Legal Standard

18 U.S.C. § 3582(c)(1)(A) allows defendants to move the district court for compassionate release after exhausting their administrative remedies. A court may grant the motion after considering the applicable factors set forth in § 3553(a) if it finds "extraordinary and compelling reasons warrant

---

[27] *Id.* at 6.
[28] *Id.*
[29] *Id.*
[30] Dkt. 188 at 3.
[31] *Id.* at 2.
[32] *Id.*
[33] *Id.* at 3.
[34] *Id.* at 2–3.
[35] *Id.* at 3.
[36] *Id.*
[37] *Id.*

such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"[38]

1. Compassionate Release

"Extraordinary and compelling reasons" for release may exist in certain specific circumstances, including when the defendant is "suffering from a terminal illness[,]" "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover[,]" or when the defendant "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."[39]

Compassionate release may also be appropriate where the defendant can establish he "was a victim of . . . physical abuse resulting in 'serious bodily injury'" "while in custody serving the term of imprisonment sought to be reduced" "that was committed by, or at the direction of a correctional officer, an employee or contractor of [BOP], or any other individual who had custody or control over the defendant."[40] The Guidelines define "serious bodily injury" as an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."[41] Further, with limited exceptions, "the misconduct must be established by a

---

[38] 18 U.S.C. § 3582(c)(1)(A).
[39] U.S.S.G. § 1B1.13(b). The Ninth Circuit has held that the version of U.S.S.G. § 1B1.13 in place before November 2023 was "not an applicable policy statement for 18 U.S.C. § 3582(c)(1)(A)" but "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant" on the basis that the previous version only applied to motions filed by the Director of the Bureau of Prisons. *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam) (internal quotation marks omitted). The Ninth Circuit also concluded that, under the previous version, a "dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i)[.]" *Id.* at 799. On November 1, 2023, U.S.S.G. § 1B1.13 was revised to include motions made by defendants. As of the date of this Order, the Ninth Circuit has not ruled on whether the updated § 1B1.13 Policy Statement is binding on district courts. However, our sister courts in the Southern District of California, District of Oregon, District of Washington, and District of Hawaii have held that the revised § 1B1.13 supersedes the decision in *Aruda*. *See United States v. Chavez*, No. 18-CR-5436-GPC, 2024 WL 24065, at *3 (S.D. Cal. Jan. 2, 2024) ("[T]he amendments clarify that the policy statements apply to motions brought by both the BOP and defendants, fixing the issues identified by the Ninth Circuit… As such the Court is bound by the policy statements."); *United States v. Arcila*, 716 F. Supp. 3d 1052, 1055 (D. Or. Feb. 12, 2024), *reconsideration denied*, No. 3:14-CR-00267-HZ-3, 2024 WL 2048643 (D. Or. May 6, 2024) ("*Aruda* is no longer good law to the extent that it held that the policy statement is not binding on motions filed by defendants."); *United States v. Brown*, No. CR16-0259JLR, 2023 WL 8650290, at *2 (W.D. Wash. Dec. 14, 2023) ("Because the current policy statement post-dates the First Step Act, *Aruda* no longer controls—the policy statement does."); *United States v. Naki*, No. CR 20-00054 HG-01, 2024 WL 4145638, at *3 (D. Haw. Sept. 11, 2024) (finding *Aruda* is no longer good law with respect to the binding effect of the Sentencing Guidelines).
[40] U.S.S.G. § 1B1.13(b)(4)(B).
[41] Application note 1(M) to U.S.S.G. § 1B1.1(a).

-4-

conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger."[42]

   2. Reduction in Sentence Under U.S.S.G. Amendment 821

A court may reduce a defendant's sentence if the Guidelines range applicable to that defendant was lowered by amendment after the defendant was sentenced.[43] However, the Guidelines Manual advises that a court "shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range."[44] The court should also consider the § 3553(a) factors and the particular circumstances of each case.[45]

   *C. Discussion*

As a threshold matter, the Court finds that Fredericks exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). Fredericks submits evidence that he, through counsel, submitted a compassionate release request to the Warden at FCI Lewisburg on August 20, 2024, but that he has not received a response.[46]

   1. Fredericks Has Not Established Extraordinary and Compelling Reasons For Compassionate Release.

Moving to the merits, the Court finds that, based on the record before it, Fredericks' health issues do not demonstrate extraordinary or compelling reasons warranting early release. Although Fredericks asserts he was recently diagnosed with a health condition, the records Fredericks provided do not clearly support that proposition.[47] Further, BOP records indicate that Fredericks was offered medication and imaging for injuries sustained in BOP custody, but that he was noncompliant and refused BOP's health services.[48] Without further documentation, the Court is unable to ascertain the severity or extent of Fredericks' health issues, and the record suggests BOP is providing him adequate medical care. Therefore, Fredericks has not established that he suffers from "a terminal illness," "a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care" within FCI Lewisburg or "a medical condition that requires long-term or specialized medical care that is not being provided."[49] While the Court is sympathetic to Fredericks' health concerns, he has not demonstrated that such conditions are extraordinary or compelling reasons to warrant his early release.

Next, the Court finds that Fredericks' allegations that he was physically abused while in BOP custody do not demonstrate extraordinary or compelling reasons warranting his early release.

---

[42] U.S.S.G. § 1B1.13(b)(4).
[43] 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10.
[44] U.S.S.G. § 1B1.10(b)(2).
[45] *Dillon v. United States*, 560 U.S. 817, 827 (2010).
[46] Dkt. 204-1 (Compassionate Release Request).
[47] Dkt. 187-1 (Sealed Medical Records) at 1.
[48] Dkt. 187-2 (Sealed Medical Records) at 1–2.
[49] U.S.S.G. § 1B1.13(b)(1)(A)–(C).

-5-

Based on the record, the Court cannot determine whether Fredericks suffered "serious bodily injury" from the alleged abuse or whether the misconduct has been established by a criminal, civil, or administrative finding. Regarding his first allegation of abuse, Fredericks alleges he was assaulted.[50] He reports he filed an administrative tort claim with BOP, and that his claim is currently under review.[51] Although he provides medical documentation of his injuries, he does not provide any further evidence regarding the status of his claim.[52] Regarding his second allegation of abuse, Fredericks alleges he was placed in ambulatory restraints due to retaliation from BOP staff.[53] However, he does not provide any medical documentation regarding this allegation, nor is it clear that he submitted any complaint to BOP regarding this incident.[54] BOP records show an incident on July 11, 2024, in which Fredericks was placed in restraints, but the medical evaluation does not indicate any injuries or trauma.[55] Therefore, based on the record before the Court, Fredericks has not established that his allegations of abuse constitute extraordinary and compelling reasons for release under U.S.S.G. § 1B1.13(b)(4).

   2. The § 3553(a) Factors Weigh Against Early Release.

In considering the § 3553(a) factors, the Court finds that a sentence reduction is not warranted. Fredericks is 31 years old and has more than two years remaining on his custodial sentence.[56] The Court has already observed that the underlying offense was "extremely serious and involved acts of violence,"[57] involving Fredericks using firearms to force, threaten, and intimidate victims during a series of robberies, during which he obtained $30,954 in U.S. currency, articles, and commodities before attempting to flee the state. He also has an extensive criminal history and an established pattern of violent behavior, as evidenced by prior convictions for burglary, assault, reckless driving, and interfering with a report of domestic violence. Moreover, Fredericks has a significant disciplinary history while in custody, for fighting, disruptive conduct, possessing contraband, assault, destruction of property, interfering with correctional staff, threatening bodily harm, indecent exposure, and engaging in sexual acts, with his latest infraction occurring as recently as July 2024.[58] Given the nature of Fredericks' offense and his criminal and disciplinary history, the Court does not find that a sentence reduction would serve the purposes of sentencing in this case, particularly considering the need to protect the public and adequately deter future criminal acts.

   3. To the Extent Fredericks Seeks an RIS, the Court Must Deny His Request to Switch From Incarceration to Home Confinement.

Fredericks frames his request as a motion for compassionate release under 18 U.S.C. § 3582. However, he also requests a RIS with release to home confinement. To the extent Fredericks requests that the Court reduce his sentence to home confinement, the Court denies his request.

---

[50] Dkt. 187 at 1.
[51] *Id.*
[52] *Id.*; Dkt. 187-2.
[53] Dkt. 187.
[54] *Id.* (absence).
[55] Dkt. 210-1 (Sealed Medical Records) at 13.
[56] *See* Dkt. 96 (Sealed Presentence Report) at 8.
[57] Dkt. 152 at 3; Dkt. 96 at 1, 6–8.
[58] *See* Dkt. 183-1 (Disciplinary Record); Dkt. 188 at 2.

U.S.S.G. § 4A1.1(e) (as amended pursuant to Amendment 821, Part A) provides for a one-point criminal history increase if the defendant has more than seven criminal history points and committed the instant offense while under a criminal justice sentence, including supervised release. Before Amendment 821, the section provided for a two-point criminal history increase if the offense was committed under a criminal justice sentence.[59]

At the time of his sentencing, Fredericks had five criminal history points and committed the offense while under a criminal justice sentence for 3AN-15-04933 CR, 3AN-16-03015 CR, and 3AN-16-05144.[60] After the two point addition under the former version of § 4A1.1(e), Fredericks had a total criminal history of seven points and a Criminal History Category of IV.[61] His criminal history category resulted in a Guidelines range of 135–168 months' imprisonment for Counts 1, 3, and 5 of the Indictment.[62] If calculated today, after Amendment 821, his Guidelines range for Counts 1, 3, and 5 would be 121–151 months' imprisonment. However, Fredericks was sentenced to ten months' imprisonment to run concurrently on Counts 1, 3, and 5 and 120 months' imprisonment on Count 1s of the Felony Information to run consecutive with all other counts.[63] Fredericks' sentence for Counts 1, 3, and 5 was therefore below the Guidelines range. Therefore, the Court finds that Fredericks is not eligible for an RIS to home confinement pursuant to U.S.S.G. § 1B1.10(b)(2).

Finding that Fredericks has not demonstrated any basis for a sentence reduction, the Court concludes that a sentence reduction is not appropriate.

Accordingly, the Motion at Docket 204 is **DENIED**.

Entered at the direction of the Honorable Timothy M. Burgess, United States District Judge.

DATE: December 3, 2024.

---

[59] *See* U.S.S.G. App. C., Amend. No. 821 (effective Nov. 1, 2023).
[60] Dkt. 96 (Sealed Final Presentencing Report) at 22.
[61] *Id.*
[62] *Id.* at 26.
[63] Dkt. 106 (Judgment) at 2.